**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| **DALE GOLDSBERRY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:08 CV00080 LMB |
| ) | |
| **AIR METHODS CORPORATION, et al.,** ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on the Petition of Plaintiff Dale Goldsberry against Defendants Air Methods Corporation, Lifenet, Inc., Harry Ward, and Tom Banks. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c).

Currently pending before the court is Defendants' Joint Motion for Summary Judgment (Document Number 7). Plaintiff has filed a Memorandum in Opposition to Defendants' Joint Motion for Summary Judgment (Doc. No. 23), and defendants have filed a Reply (Doc. No. 25). Also pending is defendants' Joint Motion to Supplement Authority, in which defendants request leave to supplement the authority cited in their Reply. (Doc. No. 26). Defendants Joint Motion to Supplement Authority will be granted.

**Background Facts[1]**

In his Petition, plaintiff alleges breach of contract, wrongful discharge, negligent retention,

---

[1]The court's recitation of the facts is taken from defendants' Statement of Uncontroverted Facts, plaintiff's Response, and Defendants' Reply. The court has noted any disputes as they are set forth in the briefs.

defamation, and tortious interference with contract. Plaintiff's claims arise out of his employment with Lifenet and Air Methods Corporation ("AMC").[2] Plaintiff worked as a helicopter pilot for eleven years for Defendants Lifenet and AMC, an air medical evacuation service with a base in Cape Girardeau, Missouri. At all relevant times, plaintiff was a member of and exclusively represented by Office and Professional Employees International Union ("OPEIU") and OPEIU Local 109 ("Union"), which are the exclusive collective bargaining representatives for a bargaining unit of pilots.

AMC terminated plaintiff on December 11, 2007, for an incident that took place on November 2, 2007, in which AMC alleged the rotor blades of the helicopter he was piloting struck a tree.[3] AMC claimed that plaintiff did not cease operation of the helicopter to check for any damage or safety hazards that may have occurred to the helicopter in violation of Federal Aviation Regulations and AMC policies. AMC also claimed that plaintiff failed to report the accident to the appropriate personnel at AMC.

The Union filed a grievance under the terms of the collective bargaining agreement ("CBA"), contending that plaintiff's termination was not for "just cause," in violation of the CBA. The Union demanded arbitration, pursuant to the terms of the CBA. Prior to the commencement of arbitration, the parties agreed to a Separation, Settlement and Release ("Settlement

---

[2]Lifenet, also known as "ARCH," was purchased by AMS in 2000. After the purchase, all ARCH/Lifenet employees became employees of AMS. See Petition at ¶¶ 37-40.

[3]Plaintiff denies that his aircraft struck a tree. Plaintiff claims that his aircraft "sucked some leaves into its rotor blades." Plaintiff's Response at 1, 5.

Agreement").[4]  Under the Settlement Agreement, AMC provided plaintiff with a $7,844.05 separation payment and plaintiff agreed not to pursue his grievance in the arbitration process and to no longer challenge AMC's decision to terminate his employment.  See Defs' Ex. B.  The Settlement Agreement resolved "all disputes between and among the parties arising from the action that led to Mr. Goldsberry's separation of employment."  Id.

In his six-count Petition filed in the Circuit Court of Cape Girardeau County, Missouri, plaintiff first alleges that Defendants Lifenet and AMC breached its contract with plaintiff by terminating plaintiff without just cause.  In Count II, plaintiff argues that he was wrongfully discharged by Defendants Lifenet and AMC.  In Count III, plaintiff asserts a negligent retention claim.  Specifically, plaintiff argues that Defendants Lifenet and AMC failed to take corrective action against Defendant Tom Banks, Director of Medical Personnel at AMC, despite plaintiff's reports about wrongdoing and violations of law by Tom Banks, and that Tom Banks contributed to Lifenet and AMC's decision to wrongfully terminate plaintiff.  In Count IV, plaintiff asserts a defamation claim against Defendant Harry Ward, Regional Aviation Manager at AMC.  Plaintiff claims that Defendant Ward stated that plaintiff had violated federal law and company policy in striking a tree on takeoff from a landing zone.  In Count V, plaintiff asserts a defamation claim against Defendant Tom Banks.  Plaintiff claims that Defendant Banks indicated in written statements on a web site and in verbal statements to AMS during their investigation that plaintiff had struck a tree on departure from a landing zone and had thereby violated federal law and company policy.  Finally, in Count VI, plaintiff asserts a tortious interference with contract claim

---

[4]Plaintiff denies that there has been a settlement of this matter.  See Plaintiff's Response at 6-7.  Plaintiff states that, although he received a check from AMC, he did not cash or deposit it.  See id. at 7.

against Defendant Tom Banks. Specifically, plaintiff contends that Defendant Tom Banks communicated to plaintiff's supervisors false information that plaintiff was not a skilled or competent pilot, thereby contributing to plaintiff's termination.

On May 28, 2008, defendants removed this matter from the Circuit Court of Cape Girardeau County, Missouri, pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, alleging that plaintiff's claims require interpretation of a collective bargaining agreement (CBA) and are subject to the Railway Labor Act, 45 U.S.C. 151 et. seq ("RLA"). On the same date, defendants filed a Joint Motion to Dismiss, in which they argue that plaintiff's claims are preempted by the RLA because they arise from or require the interpretation of a CBA. (Doc. No. 7). On June 18, 2008, in response to plaintiff's Motion to Clarify, the court converted defendants Motion to Dismiss to a Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 12(d). (Doc. No. 20).

## Discussion

### A. Summary Judgment Standard

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Catrett 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327, 106 S. Ct. at 2555 (quoting Fed. R. Civ. P. 1).

**B.    Defendants' Motion For Summary Judgment**

Defendants argue that judgment should be entered in their favor because no genuine issue of material fact exists as to the preemption of plaintiff's claims under the RLA. Specifically, defendants contend that plaintiff's state law claims depend on the interpretation or application of the CBA. Defendants further argue that the Settlement Agreement is inextricably intertwined with the CBA and is also preempted by the RLA.

In his Response, plaintiff argues that there are genuine issues as to the material facts alleged in this matter. Plaintiff disputes many of defendants Uncontroverted Material Facts and sets forth additional facts which he claims are controverted. Plaintiff argues that his claims are purely factual questions and do not require this court to interpret any terms of the CBA. Plaintiff

contends that his claims involve rights and obligations that exist independently of the CBA, thus foreclosing preemption by the RLA. Finally, plaintiff argues that defendants' motion is not properly supported by facts on the record and that the affidavit of Chris Keese should be stricken from the motion.

In their Reply, defendants contend that plaintiff's Response only reveals plaintiff's desire to argue the facts underlying his discharge from employment. Defendants state that plaintiff's exclusive opportunity to argue these facts is the grievance and arbitration process set forth in the CBA, and that plaintiff pursued that opportunity to its conclusion. Defendants argue that the undisputed facts reveal that plaintiff's claims either explicitly invoke the CBA or are inextricably intertwined with the interpretation and application of the CBA.

**1.      RLA Preemption**

A decision on preemption of federal law under the RLA is a question of subject matter jurisdiction. See Bloemer v. Northwest Airlines, Inc., 401 F.3d 935, 938-39 (8th Cir. 2005). Congress enacted the RLA to provide a comprehensive framework for the resolution of labor disputes in the rail-and-air-transportation industry. See Atchinson Topeka & Santa Fe Ry. Co. v. Buell, 480 U.S. 557, 562-63, 107 S.Ct. 1410, 94 L.Ed.2d 563 (1987). The RLA seeks "to avoid any interruption to commerce or to the operation of any carrier engaged therein; ...to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; [and] to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 151a.

The RLA regulates representation disputes, major disputes, and minor disputes. See

Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 252, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). Parties are obligated to arbitrate minor disputes, which are controversies arising out of the application or interpretation of the collective bargaining agreement. Gore v. Trans World Airlines, 210 F.3d 944, 949 (8th Cir. 2000). As such, complete preemption applies to disputes involving duties and rights created or defined by the collective bargaining agreement. Id.

"Preemption occurs if the claims are 'inextricably intertwined with consideration of the terms of the labor contract' so as to require interpretation of the CBA. Bloemer, 401 F.3d at 938 (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 213, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)). A state-law cause of action is not pre-empted by the RLA if it involves rights and obligations that exist independent of the collective bargaining agreement. Norris, 512 U.S. at 260, 114 S.Ct. 2239. Further, "'purely factual questions' about an employee's conduct or an employer's conduct and motives do not 'requir[e] a court to interpret any term of a collective-bargaining agreement.'" Id. (quoting Lingle v. Nore Div. of Magic Chef, Inc., 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)).

The undersigned finds that plaintiff's state law claims are preempted by the RLA. All of plaintiff's claims either refer directly to the CBA or rely on an interpretation of the CBA. Plaintiff's breach of contract claim is clearly preempted as it directly challenges the "just cause" provision of the CBA. Plaintiff's remaining claims of wrongful discharge, negligent retention, defamation, and tortious interference with contract relate to the circumstances surrounding plaintiff's termination. Specifically, the claims require determining whether AMC had "just cause" under the CBA to terminate plaintiff. The Eighth Circuit has held under similar circumstances that claims of slander, tortious interference with a contract, and wrongful discharge were

preempted by the RLA.  See Johnson v. Anheuser Busch, Inc., 876 F.2d 620, 623-25 (8th Cir. 1989) (slander, tortious interference with contract, and wrongful discharge); Gore v. Trans World Airlines, 210 F.3d 944, 950-52 (8th Cir. 2000) (slander).  As such, plaintiff's claims are "inextricably intertwined" with the CBA and are preempted by the RLA.

Further, the Settlement Agreement provides an additional basis for preemption of plaintiff's claims.  The Settlement Agreement resolved "all disputes between and among the parties arising from the action that led to Mr. Goldsberry's separation of employment."  Def's Ex. B.  Plaintiff does not dispute that a Settlement Agreement could be the basis for preemption, but, rather, claims that no agreement exists because he did not sign the agreement and he did not cash the check he received from AMC.  Plaintiff also challenges the applicability of the Settlement Agreement based on the provision in the Settlement Agreement stating "[t]his Agreement is non-precedent setting and shall not be used in any proceedings."  Def's Ex. B.   Plaintiff's argument that no agreement exists lacks merit.  The agreement was brokered by the Union on plaintiff's behalf, and plaintiff admits that the Union was his exclusive collective bargaining representative.  All of plaintiff's claims in this action arise from the circumstances surrounding plaintiff's termination and are therefore covered by the Settlement Agreement.

Thus, defendants have shown that the undisputed facts reveal that plaintiff's claims are preempted by the RLA.

**2.      Affidavit of Chris Keese**

As stated above, plaintiff claims that the Affidavit of Chris Keese should be stricken from defendants' motion because some of Mr. Keese's assertions constitute hearsay.

Affidavits in support of summary judgment must be made on personal knowledge and

contain admissible evidence. Fed.R.Civ.P. 56(e).

Plaintiff challenges the following statements contained in the Affidavit of Chris Keese:

On November 2, 2007, Mr. Goldsberry was involved in an accident, in which the rotor blades of the helicopter he was piloting struck a tree.

In Violation of Federal Aviation Regulations and AMC policies, Mr. Goldsberry did not cease operation of the helicopter to check for any damage or safety hazards that may have occurred to the helicopter. He instead continued the flight.

In further violation of AMC policies, Mr. Goldsberry did not report the accident to the appropriate personnel at AMC.

Defs' Ex. 1, ¶¶ 6-8.

The challenged statements all relate to the disputed facts surrounding plaintiff's termination. As discussed above, plaintiff has admitted all of the facts relevant to the preemption determination. The statements at issue in the affidavit do not require consideration in ruling on defendants' motion. As such, plaintiff's request to strike the Affidavit of Chris Keese will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Joint Motion to Supplement Authority (Doc. No. 26) be and it is **granted**.

**IT IS FURTHER ORDERED** that Defendants' Joint Motion for Summary Judgment (Document Number 7) be and it is **granted**. A separate order of Summary Judgment will be entered on this date.

Dated this  18th   day of February, 2009.

                                                      LEWIS M. BLANTON
                                                     UNITED STATES MAGISTRATE JUDGE